Donald McCORMICK, etc.

v.

AABAKUS INCORPORATED, et al.

Supreme Court of Tennessee, Special Workers' Compensation Appeals Panel.

Oct. 5, 2000.

J. Mitchell Grissim, William G. Calhoun and Ronald McNutt, Nashville, TN, for the appellant, Donald McCormick.

J. Michael Morgan, Ortale, Kelley, Herbert & Crawford, Nashville, TN, for the appellees, Aabakus Incorporated and National Fire Insurance Company of Hartford.

## JUDGMENT ORDER

PER CURIAM.

This case is before the Court upon motion for review filed by the appellant, Aabakus Incorporated, pursuant to Tenn.Code Ann. § 50–6–225(e)(5)(B) the entire record, including the order of referral to the Special Workers' Compensation Appeals Panel, and the Panel's Memorandum Opinion setting forth its findings of fact and conclusions of law, which are incorporated herein by reference;

Whereupon, it appears to the Court that the motion for review is not well-taken and should be denied; and

It is, therefore, ordered that the Panel's findings of fact and conclusions of law are adopted and affirmed, and the decision of the Panel is made the judgment of the Court. The Panel's opinion shall be published.

Costs are taxed to the appellees.

It is so ORDERED.

DROWOTA, J., not participating.

LOSER, Sp. J., delivered the opinion of the court, in which TURNBULL, Sp. J., and DROWOTA, J., joined.

## MEMORANDUM OPINION

The plaintiff contends that the trial court erred in granting a directed verdict for the defendant/employer at the conclusion of the plaintiff's case. The panel has concluded that a directed verdict was inappropriate.

This workers' compensation appeal has been referred to the Special Workers' Compensation Appeals Panel of the Supreme Court in accordance with Tenn. Code Ann. § 50–6–225(e)(3) for hearing and reporting to the Supreme Court of findings of fact and conclusions of law. As discussed below, the panel has concluded the judgment should be reversed and the cause remanded for further proceedings.

The claimant, Donald McCormick, is the surviving spouse of Deborah Elaine McCormick. The couple lived together until Deborah's death on September 10,

1998. At the time of her death, Deborah, the employee, was employed by Aabakus Incorporated as a shampoo technician at Illusions Salon and Spa.

On September 9, 1998, Deborah clocked out for lunch at 11:31 a.m. She walked to a nearby sandwich shop, where she purchased her meal and an iced tea for a co-worker. At 11:45 a.m., she returned to Illusions and went to the employee break room to eat her lunch. She did not clock back in. Shortly thereafter, she choked on a portion of her sandwich. Responding to Deborah's distress, a co-worker called for paramedics while the salon manager performed the Heimlich maneuver. Initial attempts to dislodge the blockage were unsuccessful. Deborah lost consciousness before paramedics arrived, incurring irreversible brain injury. An ambulance transported her to St. Thomas Hospital, where she was pronounced dead the following morning.

Illusions Salon and Spa allows its employees to take a thirty minute lunch break during the workday. Employees clock out during lunch and are not compensated for the break time. The salon's break room contains a refrigerator, microwave and sink. Employees are free to take advantage of the break room during lunch or to eat somewhere off the premises. At trial, Deborah's co-workers testified that management did not require them to be "on call" during lunch: however, two of the three shampoo technicians admitted to working occasionally though infrequently during these breaks.

■ Upon the above evidence, at the conclusion of the plaintiff's case, the defendants moved for a directed verdict on the ground that reasonable minds could not disagree that Deborah's death did not arise out of the employment because she was "off the clock" at the time of the fatal injury. The trial judge found that the claimant had "failed to make out a prima facie case" and dismissed the complaint. Appellate review is de novo upon the record of the trial court, accompanied by a presumption of correctness of the findings of fact, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(2). Conclusions of law are reviewed de novo without any presumption of correctness. *Presley v. Bennett,* 860 S.W.2d 857 (Tenn.1993).

■ A motion for a directed verdict is neither necessary nor proper in a case which is being tried without a jury. *See City of Columbia v. C.F.W. Construction Co.,* 557 S.W.2d 734 (Tenn.1977). Since the present claim is one for workers' compensation benefits, the case was tried to the court without a jury.

■ For an accidental injury to or death of an employee to be compensable under the Workers' Compensation Act, it must be one arising out of and in the course of employment. *See* Tenn.Code Ann. § 50–6–102(12). "Arising out of" refers to the origin of the injury in terms of causation and "in the course of" relates to time, place and circumstance. *McCurry v. Container Corp. of America,* 982 S.W.2d 841, 843 (Tenn.1998). Not every injury by accident which occurs in the course of employment is compensable; it is only compensable if it also arises out of employment, but any reasonable doubt as to whether such an injury arises out of the employment should be resolved in favor of the employee. The Act expressly declares itself to be a remedial one and should be construed liberally to effectuate its purpose of justly compensating injured employees and their families. Tenn.Code Ann § 50–6–116; *Williams v. Preferred Development Corp.,* 224 Tenn. 174, 452 S.W.2d 344 (1970); *see* also *Story v. Legion Ins. Co.,* 3 S.W.3d 450 (Tenn.1999).

Acts necessary to the life, comfort and convenience of an employee while at work are incidental to the employment and contribute to the furtherance of service; and injuries that occur in the performance thereof are deemed to have arisen out of the employment. *See Carter v. Hodges,* 175 Tenn. 96, 132 S.W.2d 211 (1939) and its progeny, particularly *McCann v. Hatchett,* 19 S.W.3d 218 (Tenn.2000).

■ Although employee lunches are frequently "off the clock" and unpaid, the national trend of workers' compensation jurisprudence has been toward recognizing lunch breaks as part of an employee's workday. *See* 1A Larson, *Workmen's Compensation Law,* § 21.02(1)(a) (1990). Injuries suffered by employees on the employment premises during lunch breaks generally are held to be compensable. *See id.* A rule barring recovery for work related injuries that occur "off the clock" would yield unjust, arbitrary results in such cases. The employee who eats on the premises also remains available to the employer and subject to the employer's control. *See id.* Employers often provide break rooms for their own convenience as well as for the benefit of employees.

Tennessee courts have long held that injuries suffered on the employer's premises during lunch breaks arise out of and in the course of employment. *See Johnson Coffee Company v. McDonald,* 143 Tenn. 505, 226 S.W. 215, 216 (1920); *Drew v. Tappan Co.,* 630 S.W.2d 624, 625 (Tenn. 1982). In the seminal "lunch break" case, *Johnson Coffee Company v. McDonald,* the Tennessee Supreme Court held compensable the death of an employee who fell down an elevator shaft during her lunch break. *Johnson Coffee Co.,* 226 S.W. at 217. As with Deborah McCormick, the deceased employee in *Johnson* had left the company premises to purchase her lunch and was killed following her return to the building. *Id* at 216. The Court adopted the general rule espoused by workers' compensation treatises. *See id* at 217.

"Where an employer provides a place for his employees to eat, or directs or permits them to go to a place for that purpose, he owes to them the same duty of protection from danger that he does at the place where such employees work."

*See id.* (quoting *Bradbury's Workmen's Compensation* (3 Ed.)).

■ While conceding at trial that injuries occurring during lunch breaks may fall within the course of employment, the employer argues that Deborah's accident did not arise out of the employment. The employer asserts that Deborah's death was caused by her personal eating habits rather than a work related hazard. At trial, Deborah's co-workers testified that she "could eat a lot of food very quickly" and that she talked while eating. Her husband testified that Deborah ate slowly at home. This debate regarding the standard of care Deborah exercised while eating seems to suggest that her claim should be barred because of her own negligence. The Workers' Compensation Act expressly bars employers from invoking employee negligence as a defense to claims. TennCode Ann. § 50–6–111. Indulging in a debate over Deborah's eating habits would subvert the statutory rule by allowing negligence standards to cloud the tests for determining compensability.

■ The employer attempts to contrast the cases of *Drew v. Tappan Co.,* 630 S.W.2d 624 (Tenn.1982), and *Pacific Employers Ins. Co. v. Booker,* 553 S.W.2d 586 (Tenn.1977), to support the proposition that injuries occurring during lunch breaks are compensable only if the injury is directly related to a hazard of the employment itself. The reasoning of those cases,

as we understand them, does not support the employer's position. In *Drew*, a similar argument was expressly rejected. The rule applicable to the present case is that where an employee is injured on the employer's premises during a break period provided by the employer, such injury is generally compensable. *See Carter v. Volunteer Apparel, Inc.*, 833 S.W.2d 492 (Tenn.1992) and authorities cited therein.

For the above reasons, the judgment of the trial court is reversed and the cause remanded for further proceedings. Costs on appeal are taxed to the appellees.